Mr. Brown Good morning your honors, may it please the court, I am Jerry Brown and I represent the petitioner Jeremy Outland in this matter. The issue before us this morning is the district court's ruling that Mr. Outland had valiantly waived his Miranda rights prior to being questioned by a Detective Weiss in connection with an arrest for heroin possession. The posture of this case is a bit unusual. This is the second appeal of matter. There's a previous ruling, as I'm sure you're aware, where the issue of the voluntariliness of the statement was addressed but the court noted the absence of a determination as to the validity of the Miranda waiver. The district court relies for its conclusion that the Miranda waiver had been valid on its belief that Mr. Outland had, prior to the discussion with Detective Weiss, said to a Springfield police officer who was guarding him in his hospital room while he was being treated for heroin intoxication that he wanted to speak. The language in the suppression hearing transcript is, he relied upon that. I follow your argument. I don't see that that's the basis for the district court's ultimate ruling against Mr. Outland. There's no question that she makes that observation but I don't think that's the substance of her ruling that there's a knowing and intelligent waiver, a voluntary waiver, right up front. I think that's just part of the fact pattern. But if we look at the language of the court's order. Right. What page are you on? I'm on looking at the appendix on page 141. Because defendant asked to speak with Weiss of his own volition without being subjected to any unusually intense pressure from law enforcement, the court finds that defendant's Miranda waiver was voluntary. So yeah, the district court does. There's a lot that precedes that though. At the earlier stages of the litigation of the case, the primary focus had been, one, was Mr. Outland so impaired by the heroin intoxication and the medication given to him to combat the medication, the intoxication. From the evidence that was presented, the court concluded that the impairment was, had not been so great. So when you go to Mr. Brown to page 14, what the district court there is saying is that, I mean literally, word-for-word, the most important evidence of the defendant's mental capacity at the time of his Miranda waiver, etc. And then she itemizes it. Right. She talks about what she heard when she listened to the recorded interview, observing that he sounded awake, etc. I mean, you know, you know the order. Yes. Yes, I do. So that, I understand your argument, but it seems to me that what you're focused on, you know, one dimension of what she said to the exclusion of all of the other care that the district court took, to look at the totality of Mr. Outland's, you know, mental state at the time that he received the warnings and chose to speak to the police. And I guess the issue here is that when the court elevates in Mr. Outland was sufficiently competent to meaningfully and properly waive Miranda, was the previous request to speak to law enforcement. Let's assume, Mr. Brown, that you're correct. Let's assume that the district court erred by considering Weiss's testimony about what the other officer had told him. How do you get around the district court's detailed and careful ruling based on the interview and the audio itself, which we have listened to? Your Honor, I acknowledge that for the sake of argument, if the Springfield officer had testified at the suppression hearing that Mr. Outland told me he wanted to speak to Detective Weiss, I would not be making this argument. And I further acknowledge that in light of the discretion that is afforded to the district judge, the district judge is entitled to make a finding based on the totality of the evidence of the medical treatment as to whether that impairment had been sufficient to make Mr. Outland incapable of meaningfully waive his Miranda rights. We disagree with that conclusion, but I do recognize the standard we would have to overcome to achieve a reversal on that point. But to that point, I would raise the following. In its discussion of how Mr. Outland presented himself during the discussion with Detective Weiss, on one hand the court concludes that as evidence of his lack of impairment, that he was lucid, that he was coherent, and he showed a very good quality of memory for detail. And then when it comes to his denial of having requested to speak to law enforcement at the very next breath, we don't credit Outland's testimony because of his poor memory. You can't say at the same time he has a good memory. But isn't she talking about different points in time? Actually they're talking about the same interview with saying that we think he was competent because he's coherent and he's showing a good quality of memory, but when it comes to things that he's disputing, well, we can't credit his testimony because of the poor quality of his memory. It can't be both ways. So I do recognize that the court is, this court is not putting a great deal of weight on the district court's connection to the state, the out-of-court statement to Detective Weiss that Mr. Outland had wanted to speak, but that is the record we have to work with. The judge said that that was why she gave the interview. I guess my overarching reaction on Mr. Brown is I think it's not, it's just irrelevant. So, in other words, I mean, if what you're trying to say is I think it's exceedingly unlikely that a guy using and dealing heroin is going to come out of a stupor in the hospital and the first thing he says is, can you bring the detective in here? I'd like to tell him about my heroin dealing. If that's what you're trying to say, yeah, that seems odd to me too. Okay? Alternatively, go to the opposite end of the spectrum. Suppose the police were just chomping at the bit to get in the medical exam room and they kind of snuck in or urged, you know, they just made their way in there. What difference does any of that make? Why don't we look at what happened with the delivery of the Miranda warnings and what condition was the defendant in mentally in terms of being able to make a voluntary knowing and intelligent waiver? Isn't that the right inquiry? Regardless of how the interview came about. Again, and my fear of going in circles in response to your question, I guess I'm putting a great deal more weight on how the court, the district court presented the rationale for its conclusion. The court said it is because of the request that they concluded that his waiver had been voluntary. While one might question as a factual matter how relevant that is relative to the rest of the record, the fact is that is the court's order and under different circumstances, I would be hesitant to urge this court, for example, to look at a professed causal relationship in a court's order and ask the court to simply read the language out as irrelevant. The court did say it. And whether the court intended for it to take on the weight that I'm putting on it right now, I guess is an open question. And I guess there is, because of the posture of this case, there is a context that's relevant here. Because this was on remand and the court, the previous panel requested that the district court make its determination about Miranda on the same record without taking any new evidence, the focus of the previous round of proceedings really did just focus on the level of impairment because of the heroin ingestion and the medication. So since this question had not been highlighted as significant, there really wasn't much of an opportunity to develop a substantial record on this point. So then once the previous panel directed the district court to make an expletive finding on Miranda, the court felt it necessary to support its conclusion by connecting it to its belief. Yeah. Okay. We'll give you a minute on rebuttal. Okay. But we understand your submission. Thank you. Thank you, Connor. Okay. Ms. Boyle, good morning. Good morning, Your Honors. May it be a pleasure, counsel. My name is Catherine Boyle on behalf of the United States. Your Honors, here the district court correctly determined that the totality of the circumstances demonstrated that Mr. Outland executed a valid waiver of his Miranda rights. I'd like to just touch briefly on knowing and intelligence since that was sort of the focus of the court's opinion in remanding the case. The district court correctly held that Mr. Outland's Miranda waiver was knowing and intelligent. In other words, that he understood the nature of the right and the consequences of abandoning it. The analysis was thorough and detailed and grounded in its factual and credibility determinations, which this court, of course, reviews for clear error and gives the court's great deference, respectively. Mr. Outland raises no meaningful challenge to this determination on appeal. The court correctly found that the audio interview showed that Mr. Outland was wide awake. He was alert. He spoke clearly. He exhibited a range of emotions. He gave great detail regarding his past drug transactions. The court acknowledged there were a couple moments of slowness or a couple moments of mumbling, but found that overall it was a very coherent interview. And actually, Mr. Outland's demeanor reflected his demeanor at the suppression hearing as well, which the court found to be important. Notably, also in terms of his understanding of the Miranda rights, the court noted that Mr. Outland actually referenced those Miranda rights and coercion issues about 40 minutes into the interview. The medical records supported this. Mr. Outland had first ingested heroin between about 10.06 and 10.44 a.m. when he was taken to the St. John's Hospital in Baltimore. By the time Mr. Outland was alleged to have requested to speak with Springfield police, there were no issues with his competence. He was viewed as wide awake, coherent. The hospital had done multiple checks. He had been given certain medications, Narcan, Revia, and Zofran, but those medications were intended to counteract the effects of the heroin that he had taken. And the court's overall analysis shows that, to the extent the court's discussing, that he didn't seem to be too impaired to give, knowing an intelligent consent from the hospital. This also applies to how his demeanor might have been affected by these sort of counteractive drugs. The court appropriately found now-Detective Weiss's testimony credible. It was consistent with the audio and medical records. He showed a lot of voice modulation. He described Mr. Outland as very coherent, very detailed, and he said that Mr. Outland requested to speak with him. And as it relates to the point I'll discuss in a little bit more detail regarding the voluntary nature, I think it's important here to note that, first of all, Your Honor made a salient point as to whether it even mattered, given that we saw a proper Miranda waiver when Detective Weiss came in. But there's also indication in the audio recording that this had actually occurred, because you have then-Officer Weiss reading Mr. Outland his Miranda warning, and then shortly after that he says, you know, I heard you have a lot to tell me. I'll put the ball in your court if you want to start talking. And that, to me, is very strong record evidence that Mr. Outland had requested the interview. You're right about that. That's right at the outset of the interview, right? It's right after the Miranda warning, yes. And, you know, Mr. Outland sits there and doesn't say, hey, wait, I didn't ask you to come here, you know. And, you know, understandably there's pressure involved in those situations, but that would have been a moment where he could have said, no, I don't have anything to tell you, particularly given that he had just received a thorough recitation of his Miranda rights. And the District Court's findings in all of this that Mr. Outland wasn't credible were really very well-founded. I mean, Mr. Outland said at the suppression hearing that he hadn't ingested heroin that morning. He said he had taken some via a needle prior to the stop, and he had admitted that both on the audio interview and in his own motion to suppress. So the District Court kind of came in evaluating Mr. Outland's credibility from that perspective, and also noted that Mr. Outland's memory appeared to be clear when it was self-serving. And I think, Judge Zainib, as you noted, the Court's criticism of Mr. Outland's memory as to that was really related to his testimony at the suppression hearing. The Court was describing Mr. Outland's memory as clear during the audio interview, and then said that it showed self-serving statements and seemed patchy at the suppression hearing, and that went towards its credibility determination. There was selective memory at the suppression hearing. That's the better way to phrase it. And the Court, which was in the best position to make this evaluation, also suggested that Mr. Outland's demeanor showed that he wasn't credible at the hearing. Touching again on the voluntary statements, which I've sort of started to do already because this analysis overlaps a little bit, it's interesting that we're here, and it's an interesting procedure, as Defense Counsel noted. It's a situation where this Court has already determined that overall Mr. Outland's statements were voluntary and that there was no evidence of police coercion. And we've addressed the voluntary issue, despite the Court's focus on the knowing and intelligence of the waiver in its opinion, because the District Court came back and Mr. Outland had touched on it in his briefs. But there is already that overarching finding that we go into this with. And there's really nothing specific to the Miranda choice and that Mr. Outland was coerced in some way. I think, as I said, there's significant record evidence that the Springfield police officer did contact Officer Weiss and say, hey, Mr. Outland wants to speak to you, which is really the main argument that's brought forward on appeal. And consistent with my other points regarding the knowing and intelligence of the waiver, there's really no other evidence in the record to suggest that this was not voluntary. If your honors have no further questions, we'll rest on the arguments in our brief and ask that the Court affirm the judgment of the District Court. Okay, thank you, Ms. Boyle. Thank you, your honors. Yeah, Mr. Brown, we'll give you a minute. Thank you, your honors. So as not to revisit territory we've already covered, I do want to make it one further point, however, about the underlying statement to Springfield police. It is noted that there is a requirement that it would be sufficient indicia of reliability for out-of-court unsworn statements here. However, the standard of this case under Illinois v. Allen is that every reasonable presumption is to be our position is that while police officers can be unnamed sources giving hearsay, they are still subject to that standard of there being sufficient indicia of reliability. And in this case, without sufficient detail to establish those sufficient indicia of reliability, it falls short of the standard required by Illinois v. Allen. Unless there are further questions, we request that the lower court remand. Okay, Mr. Brown, thank you. Thank you for accepting the court appointment. Representing Mr. Outland, Ms. Boyle, thanks again to you. We'll take the case under advisement.